1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9    UNITED STATES OF AMERICA,

10                        Plaintiff,                              NO. CR12-62RSL

11           v.

12    VICTOR BERRELLEZA-LEAL, *et al.*,          ORDER DENYING DEFENDANTS'
                                                  MOTIONS TO SUPPRESS
13                        Defendants.

14                            **I.  INTRODUCTION**

15          This matter comes before the Court on defendant Richard Anthony Ortiz's "Motion for

16   Order Suppressing Wiretap Evidence or, Alternatively Setting Evidentiary Hearing Pursuant to

17   Franks v. Delaware" (Dkt. # 531), defendant Victor Berrelleza-Verduzco's "Motion to Suppress

18   Intercepted Wire Communications and in the Alternative, for Franks Hearing" (Dkt. # 584) and

19   "Motion and Memorandum Re: Suppression of Intercepted Wire Communications for Lack of

20   Probable Cause" (Dkt. # 768),[1] defendant Enrique Magana-Guzman's "Motion to Suppress

21   Wiretap Evidence and for Evidentiary Hearing Pursuant to Franks v. Delaware" (Dkt. # 658),

22   defendant Juan Carlos Lugo-Acosta's "Motion to Suppress Intercepted Wire Communications

23   and Request for a Franks Hearing" (Dkt. # 760), and defendant Cristian Berrelleza-Verduzco's

24   ———————————

25          [1] Defendants Juan Carlos Lugo-Acosta (Dkt. # 760) and Victor-Berrelleza-Verduzco (Dkt. #
     768) filed their motions to suppress after the court heard oral argument on the other motions to suppress
26   intercepted communications on March 28, 2013.  Because defendants' motions present arguments nearly
     identical to those presented by other defendants at the hearing, the Court finds these motions suitable for
27   decision on the papers submitted and therefore, DENIES defendants' requests for oral argument.

     ORDER DENYING DEFENDANTS'
28   MOTIONS TO SUPPRESS - 1

1    "Motion and Memorandum to Suppress Evidence Obtained by Unlawful Interception of

2    Telephonic Communications" (Dkt. # 771).[2]  Defendants contend that, in seeking the wiretap

3    orders, the government failed to provide "a full and complete statement as to whether or not

4    other investigative procedures have been tried and failed or why they reasonably appear to be

5    unlikely to succeed if tried or to be too dangerous," 18 U.S.C. § 2518(1)(c), both generally and

6    with respect to the individual defendants whose phone lines the government sought to intercept.

7        Defendants further contend that the affidavits supporting the wiretap orders omitted

8    material information and thus, defendants are entitled to an evidentiary hearing under <u>Franks v.</u>

9    <u>Delaware</u>, 438 U.S. 154 (1978).  The Court heard oral argument on March 28, 2013.  For the

10   reasons set forth below, the Court DENIES defendants' motions.

## II. DISCUSSION

12   **A. Background**

13       This case arises out of a long-term investigation into the Berrelleza drug trafficking

14   organization, large-scale drug trafficking organization with ties to a Mexican-based drug cartel.

15   The investigation yielded an indictments against thirty-four defendants in all.

16       As part of the investigation into the conspiracy, the government applied for and received

17   several orders authorizing the interception defendants' phone lines.  The government first

18   applied for and received authorization to intercept the phone line of Pascual Valenzuela, a

19   member of the organization, on September 29, 2011.  Thereafter, the government sought and

20   received eight subsequent orders authorizing the interception of twelve additional phone lines

21   used by defendants.  Each of the government's applications was supported by an affidavit

22   prepared and executed by Nathan Clammer, Special Agent with Homeland Security

23   Investigations in Seattle, Washington, and each incorporated by reference the prior affidavits.

24   The investigation concluded on or about March 29, 2012, with the execution of several arrest

25

26       [2]  Several other Defendants join Ortiz's motion, Dkt. # 568, 577, 580, 583, 587, 588, 589, 640,
650, as well as Berrelleza-Verduzco's motions, Dkt. # 587, 588, 589, 623, 625, 630, 640,650, 706, 778,

27   779, and Magana-Guzman's motion, Dkt. # 778, 779.

28   ORDER DENYING DEFENDANTS'
MOTIONS TO SUPPRESS - 2

1    warrants.

2    **B. Analysis**

3        Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-

4    2520, authorizes the government to conduct electronic surveillance of suspected criminals, but

5    "the government must prove necessity before it resorts to a wiretap." United States v. Garcia-

6    Villalba, 585 F.3d 1223, 1227 (9th Cir. 2009).  In addition to demonstrating probable cause, an

7    affidavit supporting an application for a wiretap must include "a full and complete statement as

8    to whether or not other investigative procedures have been tried and failed or why they

9    reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. §

10   2518(1)(c).  The issuing judge may approve the wiretap if he or she finds that "normal

11   investigative procedures have been tried and have failed or reasonably appear to be unlikely to

12   succeed if tried or to be too dangerous." Id. § 2518(3)(c).  "This necessity requirement means

13   that the affidavit must set out a factual background that shows that ordinary investigative

14   procedures, employed in good faith, would likely be ineffective in the particular case." United

15   States v. Brone, 792 F.2d 1504, 1506 (9th Cir. 1986).  The Ninth Circuit has held that while "the

16   wiretap should not ordinarily be the initial step in the investigation, . . . law enforcement officials

17   need not exhaust every conceivable alternative before obtaining a wiretap." United States v.

18   McGuire, 307 F.3d 1192, 1196-97 (9th Cir. 2002).

19       **1. TT1**

20       The Court finds that Agent Clammer's September 29, 2011, affidavit in support of the

21   initial wiretap met the statutory requirement of necessity.  Agent Clammer submitted an 88-page

22   affidavit setting forth the government's earlier use of traditional investigative techniques and the

23   limitations of those techniques in this particular case.  For example, the affidavit explained that

24   physical surveillance was difficult and dangerous because "[m]ost of the target locations are in

25   very remote and isolated areas of Snohomish and Skagit Counties," where unknown people and

26   cars stand out and agents observed that members of the organization were "extremely paranoid

27

28   ORDER DENYING DEFENDANTS'
     MOTIONS TO SUPPRESS - 3

1   and cognizant of their surroundings." First Affidavit of Nathan Clammer ("First Clammer

2   Affidavit") (Dkt. # 613-1) ¶ 119. See United States v. Commito, 918 F.2d 95, 97 (9th Cir.

3   1990). Similarly, even though the government relied on a few confidential informants in its

4   investigation, the affidavit explained that two of these informants were unable to provide new

5   information about the organization's members and future activities because they left the

6   organization after receiving death threats from one of the leaders. Another informant had a very

7   limited role in the overall organization and thus, would not be able to provide detailed

8   information related to the organization's operations. First Clammer Affidavit ¶¶ 143, 145, 178.

9   Furthermore, the affidavit explained that using other, more actively engaged members of the

10  organization as informants was not likely to be successful as these individuals would be

11  expected to transport and deliver weapons or drugs, which the government could not allow. See

12  id. ¶ 143. The affidavit also explained that the government's use of video surveillance yielded

13  limited results, providing information about vehicles coming and going from one member's

14  residence and another member's auto-shop, but failing to provide insight into which occupants

15  of the vehicles were engaged in illegal activity. Id. ¶¶ 127-29.

16      The affidavit further explained that search warrants were not employed because the

17  investigating agents did not know the identities of all participants or all of the locations the

18  organization was using to store contraband. Id. ¶ 217. Moreover, executing search warrants and

19  interviewing individual members of the organization was likely to alert the other members to the

20  investigation. Id. ¶¶ 217, 222. While the government had not foreclosed the possibility of using

21  undercover agents, the affidavit explained that this tactic was unlikely to yield information

22  beyond the general operations of the business because the high level participants were from

23  Mexico and many of them were related. Thus, even if an undercover agent were successful in

24  infiltrating the operation, it appeared unlikely that the agent would be able to gain sufficient trust

25  as an outsider to uncover information about top tier participants. Id. ¶¶ 229-32.

26      Defendants contend that the government had previously used several investigatory

27

28  ORDER DENYING DEFENDANTS'
    MOTIONS TO SUPPRESS - 4

1   methods and did not show that it had exhausted those alternative means.  However, as noted

2   above, the government need not pursue every possible technique before legitimately obtaining a

3   wiretap order.  See McGuire, 307 F.3d at 1197.  Nor does defendants' speculation that the

4   government could have recovered valuable information through other techniques acknowledge

5   the clear statements in Agent Clammer's affidavit regarding why those alternative means would

6   not suffice.  The affidavit thoroughly described the results of the government's use of various

7   techniques and the obstacles those techniques presented going forward.  For example, the

8   affidavit acknowledged that through toll records and pen registers it was able to identify several

9   calls between a phone belonging to the wife of Ivan Berrelleza-Verduzco ("Ivan"), a member of

10  the organization, and defendant Richard Ortiz ("Ortiz"), who was in prison at the time.  First

11  Clammer Affidavit ¶¶ 241-44.  During these calls, Ivan's wife and defendant Ortiz discussed

12  past drug trafficking activities.  Contrary to Ortiz's contention, Dkt. # 531 at 13-14, the

13  affidavit's incorrect statement that Ortiz received calls in prison was not misleading or

14  confusing.  More importantly, Ortiz does not dispute the content of these calls.  The affidavit

15  also explained that the use of pen registers and billing and toll records without more was not

16  likely to achieve the goal of the investigation as those methods cannot identify the people

17  involved in conversations or the content of those conversations.  First Clammer Affidavit ¶ 261.

18       Defendants also argue that the September 29, 2011, affidavit provided nothing more than

19  boilerplate statements rather than facts specific to this case.  Dkt. # 531 at 12; Dkt. # 621 at 8-26;

20  see Dkt. # 658 at 1-2.  Contrary to defendants' position, the Court finds that the affidavit

21  contains sufficient specificity.  The affidavit described how facts particular to this investigation

22  made other means of investigation unlikely to succeed or too dangerous.  Even if the Court were

23  to agree with defendants that some statements express general conclusions, "[i]n light of the

24  many assertions that are supported by specific probative facts, the few conclusory statements . . .

25  do not render the affidavit - read in its entirety in a practical and commonsense fashion - invalid

26  under § 2518(1)(c)," Commito, 918 F.2d at 98.  The Court "recognizes that some language in the

27

28  ORDER DENYING DEFENDANTS'
    MOTIONS TO SUPPRESS - 5

1    affidavit may be conclusory or merely describe the inherent limitations of certain investigatory

2    techniques, but this is not decisive . . . The affidavit as a whole speaks in case-specific language,

3    and [the Court is] persuaded that it contains a full and complete statement as to whether or not

4    investigative procedures have been tried and failed or why they reasonable appear to be unlikely

5    to succeed if tried or to be too dangerous." Garcia-Villalba, 585 F.3d at 1230 (internal

6    quotations and citations omitted).

7        Defendant Enrique Magana-Guzman ("Enrique") argues that the government failed to

8    make a "full and complete" showing that a wiretap was necessary, in light of the separate

9    investigation into the Berrelleza organization in Arizona and the wiretap of a separate

10    organization, the Juarez-Santos organization. Dkt. # 658 at 7-18. Enrique contends that Agent

11    Clammer minimized the scope and success of the federal and state investigations in Arizona for

12    fear that full disclosure would eliminate the need for a wiretap. Id. at 8-11. While Agent

13    Clammer may not have provided as much detail about the government's leads and discoveries in

14    Arizona as defendant would like, the affidavit explained the organization's ongoing business

15    between Arizona and Washington, and agents' efforts to follow up on leads in Arizona. For

16    instance, the affidavit explained that a Phoenix detective worked with a confidential informant

17    who provided valuable tips about the organizations' transportation of drugs and money between

18    Arizona and Washington. First Clammer Affidavit ¶¶ 79-86. The federal agents and state

19    authorities followed up on these leads and conducted surveillance of several members of the

20    organization. Defendant's position ignores the fact that the government was conducting a large-

21    scale investigation of the entire Berrelleza organization and its activity in several states.

22    Furthermore, Enrique fails to explain how the investigation in Arizona decreased the necessity of

23    a wiretap.

24        As for Enrique's argument that the government failed to make a complete statement

25    regarding the Juarez-Santos investigation, the Court finds this argument unpersuasive. The

26    September 29, 2011, affidavit outlined the relevant history of the separate investigation into the

27

28    ORDER DENYING DEFENDANTS'
     MOTIONS TO SUPPRESS - 6

1   Juarez-Santos drug trafficking organization.  Id. ¶¶ 246-57.  The affidavit also described the

2   lawful interception of calls between one of the leaders of the Berrelleza organization and

3   members of the Juarez-Santos organization and why the wiretap in place for the Juarez-Santos

4   investigation was insufficient for the Berrelleza investigation.  Id. ¶¶ 252-55.  Contrary to

5   Magana-Guzman's contention, Dkt. # 658 at 17, the government was not required to exhaust this

6   source of information before seeking a wiretap for its investigation of the Berrelleza

7   organization.  See McGuire, 307 F.3d at 1197.  The Court DENIES defendants' motions to

8   suppress evidence obtained as a result of the TT1 wiretap.

9       **2.  TT5 and TT6**

10  Defendants Victor Berrelleza-Verduzco ("Victor") and Cristian Berrelleza-Verduzco

11  ("Cristian") contend that the evidence obtained from the wiretaps on their phone lines must be

12  suppressed because affidavits supporting the wiretaps failed to explain that other investigatory

13  techniques were used to investigate them individually.  Specifically, Cristian and Victor argue

14  that the January 20, 2012, affidavit targeting their respective phone lines, TT5 and TT6, did not

15  indicate that the government made any attempts to use traditional techniques to investigate them

16  before seeking wiretaps.  Dkt. # 745 at 1-4; Dkt. # 771 at 3-5.  Defendants further contend that

17  the affidavit did not incorporate by reference any other affidavit with this information.  The

18  Court disagrees.

19  Defendants are correct that "the government is not free to transfer a statutory showing of

20  necessity from one application to another – even within the same investigation," and "[e]ach

21  wiretap application must separately satisfy the necessity requirement."  Garcia-Villalba, 585

22  F.3d at 1231 (quoting United States v. Gonzalez, Inc., 412 F.3d 1102, 1115 (9th Cir. 2005)).

23  However, a district court is not required to view each wiretap application in a vacuum.  Id. at

24  1232.  Historical facts and earlier investigatory tactics described in previous applications,

25  particularly within the same investigation, are almost always relevant.  Id.  If these facts are

26  incorporated by reference into the most recent affidavit, the district court may rely on them.  The

27

28  ORDER DENYING DEFENDANTS'
    MOTIONS TO SUPPRESS - 7

1    Ninth Circuit has determined that "the government may rely on past failed attempts to infiltrate
2    an organization, detailed in past affidavits, as evidence that future attempts would be fruitless."
3    Id. This is not to say that the government may rely on the fact that an earlier wiretap was
4    necessary to justify the current application.  Id.  "The key question will always be whether the
5    wiretap application separately satisfies the necessity requirement."  Id.

6         Turning to Cristian's and Victor's concerns that the January 20, 2012, affidavit lacked a
7    showing of necessity as to their phone lines, the Court finds that this affidavit satisfies the
8    necessity requirement.  The January 20, 2012, affidavit expressly incorporates the earlier
9    affidavits in their entirety.  Fifth Affidavit of Nathan Clammer ("Fifth Clammer Affidavit")
10   (Dkt. # 699-4) ¶ 3-4.  As a result, although this affidavit may not identify in detail which other
11   investigatory techniques the government previously used to target Cristian, the government and
12   the issuing judge reasonably relied on the detailed explanations set forth in the initial affidavit.
13   For instance, the issuing judge was able to find that confidential informants were not likely to
14   yield helpful information going forward based on the September 29, 2011, affidavit's detailed
15   explanation of the government's use of confidential informants to gain information about
16   Cristian and the limitations encountered with respect to that particular strategy.  First Clammer
17   Affidavit ¶¶ 31-34, 61-64, 69, 79-86, 143-64, 178.

18        In addition, the September 29, 2011, affidavit detailed the government's physical and
19   other electronic surveillance of Cristian, id. ¶¶ 44-45, 69, 115, its use of toll analysis and pen
20   registers of Cristian's phone and why those methods were not as successful in this particular
21   investigation, id. ¶¶ 212, 259-62, and its monitoring of calls between Cristian and members of
22   the organization who were in immigration custody and the inherent limitations in that technique
23   once the members got out of detention, id. ¶¶ 235-40.  The affidavit also noted that more
24   common investigatory techniques were unlikely to yield helpful information about Cristian
25   because he was particularly paranoid about police.  See id. ¶¶ 69, 201-11.  Because the January
26   20, 2012, affidavit incorporated by reference the initial affidavit, the Court finds that the

27
28   ORDER DENYING DEFENDANTS'
     MOTIONS TO SUPPRESS - 8

government made a sufficient showing of necessity to support the wiretap application of TT5. See Garcia-Villalba, 585 F.3d at 1231.

With respect to Victor and TT6, the January 20, 2012, affidavit explained the other investigatory methods the government used in its investigation of him. For instance, this affidavit explained in significant detail the government's physical surveillance of Victor during what Agent Clammer suspected was the early stages of a robbery of a rival organization's house. Fifth Clammer Affidavit ¶¶ 45-56. After agents saw Victor's car in a parking lot, they attached a GPS device to Victor's car and eventually performed a search of the target residence with consent from a resident. Id. In addition, other affidavits incorporated by reference described the government's continued surveillance efforts. See e.g., Fourth Affidavit of Nathan Clammer ("Fourth Clammer Affidavit") (Dkt. # 699-3) ¶ 162. The January 20, 2012, affidavit also described the counter-surveillance measures that Victor took, which made it unlikely that surveillance would produce results that would meet the goals of the investigation. Fifth Clammer Affidavit ¶ 55.

The Court finds that the government established necessity for the wiretap with regard to TT5 and TT6 in the context of its investigation of the entire drug trafficking organization. See United States v. Reed, 575 F.3d 900, 911-12 (9th Cir. 2009) ("As with probable cause, the government has no duty to establish necessity as to each possible interceptee. It is sufficient that there was necessity to tap the phone.") (quotations omitted). Thus, defendants' motions to suppress evidence obtained through wiretaps on TT5 and TT6 are DENIED.

### 3. TT8 and TT10

Victor and Cristian also argue that the government's affidavits supporting the wiretap applications for their other phones, TT8 and TT10 respectively, fail to show necessity as to them individually. Defendant Juan Carlos Lugo-Acosta also objects to the admission of communications intercepted on TT8 on the basis that the affidavit fails to show that the government attempted to use traditional means to investigate Victor.

ORDER DENYING DEFENDANTS'
MOTIONS TO SUPPRESS - 9

After the government received authorization to intercept communications on TT5 and TT6 in January 2012, agents observed both a decline in the use of those phones and the presence of two new phones, TT8 and TT10, which were being used by Victor and Cristian. Sixth Affidavit of Nathan Clammer ("Sixth Clammer Affidavit") (Dkt. # 699-5) ¶¶ 19-22; Eighth Affidavit of Nathan Clammer ("Eighth Clammer Affidavit") (Dkt. # 699-7) ¶¶ 19-24. The government subsequently sought authorization to intercept communications on TT8 and TT10. In the affidavits supporting these wiretaps, the government incorporated by reference its prior affidavits. Sixth Clammer Affidavit ¶¶ 3-4; Eighth Clammer Affidavit ¶¶ 3-4. In the February 11, 2012, affidavit supporting the wiretap of TT8, the government explained that the government intercepted a call during which Cristian instructed Victor to purchase a container in which they could burn their trash. Sixth Clammer Affidavit ¶ 75. The affidavit also explained that physical surveillance and analysis of cell phone tower hits revealed the location of a new stash house. Id. While surveilling the new stash house, the government saw a fire in the backyard. Id. The results of these investigatory efforts further supported the government's earlier statements that other techniques, such as trash analysis, would be unsuccessful in achieving the goals of the investigation. Similarly, the February 24, 2012, affidavit supporting the wiretap of TT10 explained the government's recent surveillance of Cristian, the installation of a video camera near the new stash house, and the limitations of those two surveillance tactics. Eighth Clammer Affidavit ¶¶ 61-62. These updates, combined with the government's previous statements of necessity, were sufficient to establish "case-specific" necessity with respect to TT8 and TT10. See Garcia-Villalba, 585 F.3d at 1231.

Victor makes a final argument that the wiretap affidavits supporting applications for TT6 and TT8 did not demonstrate probable cause. Dkt. # 768 at 6-7. He argues that the section entitled "Probable Cause for Voice Interception of TT6" was insufficient to establish probable cause that Victor either committed a crime or was about to commit a crime. This argument is not persuasive.

ORDER DENYING DEFENDANTS'
MOTIONS TO SUPPRESS - 10

1    For the government to receive authorization for a wiretap, there must be "probable cause

2    to believe that the telephone is being used to facilitate the commission of a crime." United

3    States v. Reed, 575 F.3d 900, 910 (9th Cir. 2009). Here, the affidavits supporting the

4    interception of TT6 and TT8 described a grand-scale drug trafficking organization and identified

5    specific facts indicating that Victor was involved. The January 20, 2012, affidavit described

6    calls between Victor and defendant Juan Magana-Guzman ("Juan") during which the two men

7    discussed the amount and weight of something that Magana delivered to a suspected drug dealer.

8    During one call, the two discussed whether the scale they were using to measure the substance

9    was accurate. Fifth Clammer Affidavit ¶ 74. In addition, although not explained in the section

10    entitled "Probable Cause," the affidavit described telephone calls between Juan and Victor

11    during which they appeared to be organizing people and seeking "devices," to attempt to rob a

12    rival drug organization. When read in conjunction with the descriptions of calls between Juan

13    and others, e.g., id. ¶ 37, Victor's intercepted conversations with Juan demonstrated probable

14    cause that he was involved in the drug trafficking organization. Additionally, the affidavit

15    explained that through intercepted calls, physical surveillance, and use of a GPS device, the

16    government discovered that Victor and Juan were preparing to follow the wife of a leader of a

17    rival organization and rob one of that organization's stash house. Id. ¶¶ 45-56. A later search of

18    the suspected target house revealed $32,000 in cash in two shoe boxes, a number of one dollar

19    bills throughout the house, and a .45 caliber pistol hidden between the mattresses in the master

20    bedroom. Id. ¶ 53.

21    **4. Franks Hearing**

22    Defendants request that the Court conduct a hearing pursuant to Franks v. Delaware, 438

23    U.S. 154 (1978). Franks held that "where the defendant makes a substantial preliminary

24    showing that a false statement knowingly and intentionally, or with reckless disregard for the

25    truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is

26    necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be

27

28    ORDER DENYING DEFENDANTS'
     MOTIONS TO SUPPRESS - 11

1   held at the defendant's request." 438 U.S. at 155-56. <u>Franks</u> set forth a rule of limited scope; a

2   defendant is entitled to a <u>Franks</u> hearing "only if he makes a two-fold showing: intentional or

3   reckless inclusion or omission, and materiality." <u>United States v. Bennett</u>, 219 F.3d 1117, 1124

4   (9th Cir. 2000). A false inclusion or an omission is considered material if the affidavit, purged

5   of its defects, would not be sufficient to support a finding of probable cause or necessity. <u>Id.</u>

6       Defendants fail to meet this burden in requesting a <u>Franks</u> hearing. Defendants contend

7   that the affidavits' omission of facts regarding other investigative procedures requires the Court

8   to hold a <u>Franks</u> hearing. <u>See</u> Dkt. # 658 at 3; Dkt. # 621 at 30-31. This does not amount to a

9   substantial showing of actual and deliberate falsity. <u>See United States v. Prime</u>, 431 F.3d 1147,

10  1150 n.1 (9th Cir. 2005).

11      "To mandate an evidentiary hearing, the challenger's attack must be more than

12  conclusory and must be supported by more than a mere desire to cross-examine." <u>Franks</u>, 438

13  U.S. at 171. Because there is a presumption of validity with respect to the affidavits, <u>id.</u>, the

14  affiant's statements are deemed trustworthy absent any information indicating otherwise. There

15  appears to be some disagreement among the parties about the requisite showing defendants must

16  make to be entitled to a <u>Franks</u> hearing. While the case law does not require "clear proof of

17  deliberate or reckless omissions or misrepresentations," defendants must "make a substantial

18  showing that supports a finding of intent or recklessness." <u>United States v. Gonzalez, Inc.</u>, 412

19  F.3d 1102, 1111 (9th Cir. 2005). In <u>Gonzalez, Inc.</u>, for example, defendants made the requisite

20  preliminary showing for a <u>Franks</u> hearing by filing 100 pages of attachments supporting their

21  contentions that the wiretap affidavits intentionally misrepresented the potential benefits of

22  traditional investigatory techniques. <u>Id.</u> at 1110-11.

23      Here, Defendants' "disbelief" and curiosity regarding agents' intentions "does not amount

24  to the substantial showing required under <u>Franks</u>." <u>United States v. Meling</u>, 47 F.3d 1546, 1554

25  (9th Cir. 1995). Victor's suggestion that he "is entitled to a Franks hearing to determine whether

26  the application contained material misstatements and omissions (sic), and if so whether these

27

28  ORDER DENYING DEFENDANTS'
    MOTIONS TO SUPPRESS - 12

misstatements and omissions worked to conceal the fact that the wiretap was not necessary," Dkt. # 621 at 30 (internal quotations and alterations omitted), ignores the fact that a hearing cannot be triggered on the face of the pleadings alone.  See United States v. Chavez-Miranda, 306 F.3d 973, 979 (9th Cir. 2002) ("Chavez-Miranda offers no evidence . . . to support the claim that the omissions were reckless or intentionally misleading.").

Ortiz also contends that the error in the affidavit regarding the direction of the calls between Ortiz and Ivan's wife require a Franks hearing because the mistake was designed to be misleading.  Dkt. # 531 at 14-15.  As noted above, conclusory allegations such as this are insufficient to trigger a hearing.  More significantly, the mistake regarding the direction of the calls was not misleading.  The Court is well aware that a federal prisoner may not receive calls while in detention.  Thus, the Court finds that this minor error was neither misleading nor material.

## III. CONCLUSION

For all of the foregoing reasons, defendant Richard Anthony Ortiz's "Motion for Order Suppressing Wiretap Evidence or, Alternatively Setting Evidentiary Hearing Pursuant to Franks v. Delaware" (Dkt. # 531), defendant Victor Berrelleza-Verduzco's "Motion to Suppress Intercepted Wire Communications and in the Alternative, for Franks Hearing" (Dkt. # 584) and "Motion and Memorandum Re: Suppression of Intercepted Wire Communications for Lack of Probable Cause" (Dkt. # 768), defendant Enrique Magana-Guzman's "Motion to Suppress Wiretap Evidence and for Evidentiary Hearing Pursuant to Franks v. Delaware" (Dkt. # 658), defendant Juan Carlos Lugo-Acosta's "Motion to Suppress Intercepted Wire Communications and Request for a Franks Hearing" (Dkt. # 760), and defendant Cristian Berrelleza-Verduzco's "Motion and Memorandum to Suppress Evidence Obtained by Unlawful Interception of Telephonic Communications" (Dkt. # 771) are DENIED.

ORDER DENYING DEFENDANTS'
MOTIONS TO SUPPRESS - 13

DATED this 11th day of April, 2013.


*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANTS'
MOTIONS TO SUPPRESS - 14